HERMANDSON, Respondent, v. CITY OF CANTON, Appellant.

(244 N. W. 525.)

(File No. 7274.   Opinion filed October 4, 1932.)

*Claude A. Bennett,* of Canton, and *Boyce, Warren & Fairbank,* of Sioux Falls, for Appellant.

*Hall & Eidem,* of Brookings, for Respondent.

POLLEY, J.   This action was brought for the recovery of damages occasioned by an accident that took place on one of the sidewalks in the city of Canton.   The case was once here on an appeal from an order overruling a demurrer to the complaint, 57 S. D. 267, 231 N. W. 935, where a statement of the facts as they

appear in the complaint will be found. Verdict and judgment were for plaintiff, and defendant appeals.

The accident occurred at the intersection of Second street and College avenue between 10 and 11 o'clock on the night of the 10th day of June, 1929. Plaintiff was walking in an easterly direction on the sidewalk along the south side of Second street. The sidewalk is made of concrete and is five feet in width. There is a concrete crosswalk crossing College avenue along the south side of Second street. This crosswalk is five feet wide, but only three feet of its width is flat. One foot of its width along each side slopes downward at a considerable of an angle. This crosswalk is embedded in the ground so that its upper surface is but slightly, if any, righer than the surfact of the street. Under the end of the sidewalk where it joins the crosswalk, is a circular tile culvert twenty-four inches in diameter. This situation is well illustrated by the accompanying plat, being Exhibit No. 1 in the record:

By examining this exhibit it will be seen that there is an opening under the end of the crosswalk along the easterly side of the culvert, apparently caused by water washing under the end of the

crosswalk. This exposes the sloping surface of the crosswalk where it joins the end of the sidewalk just over the east side of the culvert. The night was dark. There was no street light nearer than a block away—400 feet to the east and 349 feet to the west. The sidewalk was obscured by trees and bushes, along the side of the street, and also by grass and weeds along the edge of the sidewalk and crosswalk. College avenue at this intersection does not appear to be used for travel, and shows no trail or traveled way through the grass and weeds on the surface of the ground.

As plaintiff approached the culvert from the west, he was walking along the north edge of the sidewalk. As he crossed the culvert he stepped onto the sloping surface of the end of the cross-walk. His foot slipped and he was thrown or fell into the ditch at the end of the culvert with such force as to break one of his legs and to otherwise seriously injure him.

Plaintiff had never before been along the street at this particular place, and did not know he was approaching a crosswalk or that there was a culvert under the sidewalk. There was not sufficient light to enable him to see that the edge of the crosswalk sloped downward or that there was a hole under the end of the crosswalk. He had no warning that there was a change in the surface of the walk. There was no railing over the opening under the end of the crosswalk, nor was there sufficient light to enable him to see that there was an opening there. The sidewalk, the crosswalk, and the culvert had all been constructed pursuant to plans that had been approved and adopted by the city council, and had been in use for more than twenty-five years prior to the time of the accident. The defense set up by the defendant is contributory negligence on the part of the plaintiff.

■ It is not contended by the plaintiff that there was any defect in the plan of the city for the construction of its sidewalks, crosswalks, or culverts, or that the city was negligent in constructing the same. The negligence, if any, on the part of the defendant, does not consist of an error of judgment in the plan of construction of the sidewalk or crosswalk, and appellant is right in its contention that: "Where a city adopts a plan for constructing a sidewalk and crosswalks and puts it in use over the city, unless the plan is so manifestly dangerous that a court can say, as a matter of

law, that the plan was dangerous and unsafe, the city is not liable for an accident caused solely by this plan of construction."

The negligence, as contended by respondent, consists first in maintaining its sidewalks and crosswalks in such a condition that a person passing along in an ordinarily careful prudent manner on a dark night would be likely to slip on the rounding surface of the walk and fall into the hole below, and upon this question the court instructed the jury as follows: "A person traveling on a public street of a city, which is in constant use by the public, while using the same with reasonable care and caution, has a right to presume that such street is in reasonably safe condition and is reasonably safe for ordinary travel by night, as well as by day, throughout its entire width, and is free from all dangerous holes, conditions and obstructions. The defendant had the right to presume, also, that persons walking upon the sidewalks and crossings of the city, by night, as well as by day, would exercise the care and caution which a reasonably prudent person would use and exercise under the same conditions."

Respondent claims that appellant was negligent in failing to maintain guard rails along or over the place where respondent was injured, and upon this question the court instructed the jury as follows: "The plaintiff claims that the crossing and culvert were dangerous because there was no guard rail on each side of the crossing. No guard rail would be required if the sidewalk and culvert was in a reasonably safe condition for travel by night, as well as by day, by persons on foot and exercising the care and caution which an ordinary prudent person would use and exercise under the same circumstances. If the sidewalk and culvert were not in reasonably safe condition for travel on foot by night, as well as by day, by persons exercising the ordinary care and caution which an ordinary prudent person would use and exercise under the same circumstances, then a guard rail was required and the city would be negligent in failing to provide such guard rails as might be necessary. It will be for you to determine from all of the evidence whether the city was negligent in failing to provide a guard rail at this particular crossing and culvert."

Respondent also claims that appellant was negligent in failing to have the place where respondent was injured sufficiently lighted

to enable a reasonably careful person to see the condition of the walk at that particular place, and upon this question the court instructed the jury as follows: "Cities are given power to light their streets, but no duty is imposed upon a city to light its streets in any particular way, or to any particular degree. That is left to the discretion of the city council. The City of Canton cannot be held liable in this case simply because there was no street light at this crossing. But, if the condition of the street and sidewalk or shade trees was such that the crosswalk and culvert was not reasonably safe for travel in the night time, as well as by day, without a light at that place of intersection of said street, then it was the duty of the city to make said crosswalk and culvert reasonably safe for travel by night, as well as by day, and if it appeared reasonably necessary to have a light at that street to make said crosswalk and culvert reasonably safe for travel, then the city would be negligent in failing to place a light at that street. If it would not appear to an ordinarily prudent person that it was reasonably necessary, to make the crosswalk and culvert reasonably safe for travel by night, to have a light at said street, then the city would not be negligent in faiing to have a light at said street."

Appellant excepted to these instructions on the ground that they fail to take into consideration the proposition of walking across crossings which are not, as a rule, constructed on a level for their entire width, with the sidewalk, and that a pedestrian does not have a right to assume that crosswalks are of the same width or in the same condition as the rest of the sidewalk; also for the reason that they take away from the city commission all right of judgment and discretion as to where they should place their lights and leaves it for the jury to determine whether the city commission properly exercised its discretion in the placing of lights within the city, and that the city cannot be held liable for not having placed the light at any particular spot. Appellant further excepted to the said instructions for the reason that they take away from the city commission its power of judgment and discretion as to how a street should be kept and how the crossings should be constructed and protected, and for that reason deprived the city commission of all discretion in the matter.

The first exception is not well taken for, while the

plan upon which the crosswalks were constructed contemplates that only three feet of their width are to have a level surface, it also contemplates that the upper surface of the crosswalk will be nearly on a level with the surface of the street so there will be little, if any, danger of a person slipping off the sloping surface at the edge of the crosswalk, and certainly such plan does not contemplate having the surface exposed, so that a person stepping on it would be likely to slip, and a hole thereunder as was the case where plaintiff was injured. And whether a pedestrian has a right to assume that a crosswalk is as wide as the adjoining sidewalk is not material in this case for the crosswalk actually was as wide as the sidewalk, and in the absence of knowledge or warning to the contrary, a pedestrian has a right to assume that both sidewalk and crosswalk, however wide or narrow is reasonably safe for ordinary travel. This is a general rule of law and is stated in Ruling Case Law (13 R. C. L. p. 472) as follows: "It is a well established general rule that persons using a public way which is in constant use, and when their attention has not been called to any obstructions or perils thereon, have a right to presume, and to act on the presumption, that the way is reasonably safe for ordinary travel, and this is equally true whether they are traveling at night or in the day." This rule is supported by innumerable authorities cited in the text. "The duty of the city to keep its streets in a safe condition for public travel is absolute, and it is bound to exercise reasonable diligence and care to accomplish that end." Turner v. Newburgh, 109 N. Y. 301, 16 N. E. 344, 345, 4 Am. St. Rep. 453. Respondent was not bound, at his peril, to keep his eyes constantly on the walk. He had a right to believe that the walk was in a reasonably safe condition and to act with reasonable prudence upon that belief. City of Denver v. Maurer, 47 Colo. 209, 106 P. 875, 135 Am. St. Rep. 210. The instructions given by the court did not take from the defendant its right of judgment and discretion as to where it should place its lights, but only told the jury that if the street or sidewalk was in such condition that it was not reasonably safe for travel by night without a light, then it was the duty of the city to provide sufficient light to enable a person, in the exercise of ordinary care, to have seen and avoided the danger. The city had undertaken to light the street upon which the accident occurred, and having so undertaken, it became liable

for any injury that may have resulted from the negligent manner in which the lighting was done. Winchester v. Carroll, 99 Va. 727, 40 S. E. 37. Nor do the instructions given the jury take from the city commission the right to exercise its judgment and discretion as to the manner in which it should construct and protect its street crossing in regard to guards and railings. It is the duty of the city to keep its sidewalks and crosswalks in a reasonably safe condition for the use of pedestrians in the nighttime as well as daytime. The instruction merely told the jury that if the sidewalk and crosswalk were in such condition that a guard rail was necessary to make them reasonably safe, it was their duty to provide such guard rail, and that the city was negligent in failing to provide such guard rails as might be necessary. This is a correct statement of the law: "A municipality is liable for neglect to guard or place lights around obstructions and dangerous points in a highway, or to furnish suitable barriers wherever necessary for the safety of travelers." 29 C. J. 688, and numerouse cases cited. And in Gellenbeck v. City of Mobridge, 40 S. D. 157, 166 N. W. 631, this court held that a city is negligent in permitting a hole in the sidewalk to "remain unguarded by any rail, screen, or guard during the darkness of the night without any street or other light to warn pedestrians of the existence of the danger" or falling into the hole. In this case a concrete sidewalk had just been built along a new building. For the purpose of letting light into the basement of the building, an opening in the sidewalk twenty-two inches wide, four feet long, and seven feet deep, had been left along the side of the building. Plaintiff fell into the hole and was injured. And in Usletten v. City of Brookings, 58 S. D. 303, 235 N. W. 705, and on rehearing, 59 S. D. 477, 240 N. W. 851, we held that the city was negligent in permitting a guard rail around an opening in the sidewalk to become and remain in such a state of disrepair as to be dangerous to persons using the sidewalk.

Appellant took exception to the refusal of the trial court to instruct the jury as follows: "Cities are given power to light their streets, but no duty is imposed upon a city to light its streets in any particular way, or to any particular degree. That is left to the discretion of the city council. The city of Canton cannot be held liable in this case simply because there was no street

light at the crossing." This instruction was properly refused. In the first place the subject of the lights was fully and correctly covever by the instruction given by the court, and in the second place it is not a correct statement of the law. It tells the jury that the city cannot be held liable for failure to provide a light at the place of the accident, however great the necessity of a light to make such place safe for use in the nighttime.

The appellant also excepted to the refusal of the trial court to give the jury the following instruction: "It is alleged in the complaint that this culvert and sidewalk over it were dangerous because there was no guard rail on each side of the culvert. Guard rails are not required or used at ordinary street crossings over culverts or ditches. No guard rail could be required here unless the hole on each side was so wide and deep that it would appear dangerous to an ordinarily prudent man without a guard rail. Unless it was so dangerous without a guard rail that a man of ordinary prudence could not cross it safely, no guard rail could be required of the city. Guard rails are required on bridges and embankments but not usually at street crossings over culverts." There was no error in refusing to give this instruction. The instruction is not correct as applied to the facts in the case. Whether there was a hole on both sides of the walk at the place where plaintiff was injured is not material, nor is there any evidence to show there was a hole on the south side of the walk. But aside from this the subject of the instruction is fully covered by instruction No. 12 given by the court. Moreover, the instruction wholly overlooks the question of darkness. Pedestrians might have passed this place in perfect safety in daytime or in the nighttime had it been properly lighted, and still it might be a dangerous place to pass in the dark.

Upon the whole record we feel that the case was fairly tried and that the verdict is abundantly supported by the evidence.

The judgment and order appealed from are affirmed.

ROBERTS and WARREN, JJ., concur.

CAMPBELL, P. J., concurs in result.

RUDOLPH, J., disqualified and not sitting.